IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL KALLOK, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action 2:21-cv-805 |
| | ) |
| vs. | ) |
| | ) |
| WING ENTERPRISES, INC. t/d/b/a LITTLE GIANT LADDER SYSTEMS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Wing Enterprises, Inc., t/d/b/a/ Little Giant Ladder Systems has filed a Motion to Exclude the Testimony of David J. Bizzak, Ph.D. ("Motion to Exclude") (ECF No. 39.) Defendant contends that the opinions expressed by Dr. Bizzak, an expert proffered by Plaintiffs Paul Kallok and Shana Kallok, fail to meet the standards for expert testimony under Federal Rule of Evidence 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Plaintiffs oppose the Motion to Exclude, and this matter has been fully briefed. (ECF Nos. 40 and 50.)

For the reasons set forth below, Defendant's Motion to Exclude will be denied.

**I.   Relevant Factual and Procedural Background**

Plaintiffs commenced this action after Plaintiff Paul Kallok fell from a ladder manufactured by Defendant while he was installing gutter guards. The Complaint asserts four causes of action: (1) strict liability; (2) negligence; (3) breach of warranty; and (4) loss of consortium. (ECF No. 1.) In support of their claims, Plaintiffs have submitted the expert report of Dr. Bizzak, who

opines, among other things, that a ladder rung to which a standoff was attached separated because of a failed weld. (ECF No. 48-1.)[1]

Defendant seeks to exclude Dr. Bizzak from rendering any opinions or providing any testimony on multiple grounds, including its contention that he is not qualified, he did not engage in any scientific analysis or methodology, and his analysis does not fit the factual scenario involved in this case. (ECF No. 40 pp. 2-3.) Each of these issues will be addressed below.

## II. Overview of Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It requires that a witness who qualifies as an expert through knowledge, experience, training, or education may provide expert testimony and opinions so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) that testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[1] Defendant has also filed a Motion and Brief in Support of Motion for Summary Judgment (ECF Nos. 37 and 38), a Concise Statement of Material Facts Not in Dispute (ECF No. 41) and an Appendix to the Concise Statement of Material Facts (ECF No. 48.) Plaintiffs filed a Brief in Opposition to Defendant's Motion for Summary Judgment (ECF No. 49), a Response to Defendant's Concise Statement of Material Facts Not in Dispute and Concise Counterstatement of Material Facts (ECF No. 51) and an Appendix in Support of Plaintiffs' Response to Defendant's Concise Statement of Facts and Plaintiffs' Counterstatement of Material Facts (ECF No. 53.) Both Appendices contain Dr. Bizzak's report (Defendant's at ECF 48-1 pp. 287-303; Plaintiffs' at ECF 53 Exhibit D.) Dr. Bizzak's November 21, 2022 report will be cited as "Bizzak Report". The other factual citations to the record are from uncontested facts contained in either Defendant's Concise Statement of Material Facts Not in Dispute (ECF No. 41) or Plaintiffs' Response to Defendant's Concise Statement of Material Facts Not in Dispute and Plaintiffs' Counterstatement of Material Facts (ECF No. 53).

"The inquiry envisioned by Rule 702 is . . . a flexible one . . . [directed at] the scientific validity—and thus the evidentiary relevance and reliability—of . . . the proposed submission." *Daubert*, 509 U.S. at 594–95.

"District courts perform a gatekeeping function to ensure that expert testimony meets the requirements of Federal Rule of Evidence 702." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017). "As gatekeeper, a trial judge has three duties: (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (quoting *Daubert*, 509 U.S. at 591).

**III.   Discussion**

    A.  <u>Qualifications of Dr. Bizzak</u>

Defendant first argues that Dr. Bizzak offers opinions outside his professional experience and about which he has no expertise. It asserts that while all of his opinions relate to metallurgy, Dr. Bizzak is not a metallurgical engineer, nor is he qualified to opine on weld quality and/or weld failures. Moreover, he is not a "ladder expert," and did not review ANSI standards related to ladders. As such, Defendant contends, Dr. Bizzak's expert testimony should be excluded.

Plaintiffs dispute Defendant's contentions about Dr. Bizzak's qualifications. As reflected in his resume, he has a Ph.D. in mechanical engineering from Carnegie Mellon University. (ECF No. 53 Exhibit E.)  Plaintiffs note that as Dr. Bizzak testified, "materials are part of the realm of knowledge within mechanical engineering…" and those in his field must "understand the design of connections between materials…," including welds. (ECF No. 51 ¶ 147.)  He has analyzed

welds in the nuclear power industry and has worked on and rendered opinions in matters cases involving ladders and metallurgy. (*Id.* ¶¶ 137, 145.) Further, one of his areas of specialization is manufacturing defects, the subject of his opinions in the case. (*Id.* ¶ 137.) They also note that his opinions relate to failure analysis, not metallurgy, an area in which he has significant experience. In addition, he consulted a metallurgical specialist in reaching his conclusions and opinions. (*Id.* ¶¶ 141-143.)

> As noted by the Third Circuit:
>
> Qualification requires "that the witness possess specialized expertise." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). We have interpreted Rule 702's qualification requirement liberally. *See id.; see also Paoli* 35 F.3d at 741. We have held that a "broad range of knowledge, skills, and training qualify an expert." *Paoli 35 F.3d 741*.
>
> This liberal policy of admissibility extends to the substantive as well as the formal qualifications of experts. *Id.* "[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (accepting more general qualifications in holding that a treating physician did not have to practice a particular specialty in order to testify concerning certain matters).

*Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).

Dr. Bizzak need not be the most qualified expert or have expertise in a subspeciality limited to ladder failures. Rather, he need only possess sufficient expertise through a combination of education, knowledge, and experience to qualify as an expert. The Court concludes that he possesses the necessary qualifications based on his knowledge, education, and experience. *See* Fed. R. Evid. 702. He is a mechanical engineer with many years of experience in failure analysis. In addition to his experience in analyzing the sufficiency of welds and working on matters involving ladders and metallurgy, he consulted a metallurgist and used this data in his analysis. Contrary to Defendant's contentions, he is not required to be a "ladder expert" or a metallurgist to

4

be qualified to opine regarding what he characterizes as the failure of welds in the ladder. The issues raised by Defendant regarding Dr. Bizzak's qualifications go to the weight that a trier of fact may give to his opinions, not whether he is qualified to offer them. Defendant may explore Dr. Bizzak's qualifications on cross-examination at trial. It has failed to show, however, that Dr. Bizzak is not qualified to testify as Plaintiffs' expert.

    B. <u>Methodology and Reliability</u>

Defendant argues that Dr. Bizzak's opinions are unreliable and are not based on any methodology. Defendant bases these contentions upon its assertions that Dr. Bizzak did not perform independent testing of the ladder, did not consider peer reviewed materials, only reviewed a few cases involving ladders, did not consider ANSI standards and did not know the specific ANSI standard applicable to the ladder involved in the case.

An expert's testimony must be "based on the methods and procedures of science, not on subjective belief and unsupported speculation." *UGI Sunbury*, 949 F.3d at 833–34 (quoting *Karlo*, 849 F.3d at 80–81). *See also In re Paoli R.R. Yard PCB Litig,.* 25 F.3d at 744 (an expert's opinion is "based on 'good grounds'…if it is based on the methods and procedures of science."); *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396,404 (3d Cir. 2003) (to be reliable, an expert's opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" (quoting *Paoli II*)).

According to Dr. Bizzak, his initial methodology included a visual inspection of the ladder and interviewing Paul Kallok. Based on this visual examination, Dr. Bizzak was able to observe separation of the ladder rung from the side rails. (Bizzak Report, p. 2.) He also noted that the standoff remained clamped to the ladder rung, but the rung was separated from the side rails of the ladder. (*Id*). He also observed that there was no tearing or deformation of the base material. (*Id*.)

Thereafter, he reviewed the documents, photographs, and a video of the accident scene produced during discovery as well as six depositions taken in this action. (Exhibit D; *see also* ECF No. 51 ¶ 157.) Dr. Bizzak also reviewed quality control standards and tests conducted by Defendant. (ECF No. 51 ¶¶ 154-156.) He engaged a metallurgist to perform metallurgical scans in order to examine a cross-section of the welds. This laboratory examination utilized both nondestructive microscopic examination and destructive testing. (Bizzak Report, pp. 1, 4-5; *see also* ECF No. 51 ¶¶ 159-164.)

Finally, Plaintiffs contend, as this action relates to allegations of a manufacturing defect, not a design defect, ANSI standards are not relevant. (ECF No. 51 ¶¶ 167-168.) Plaintiff also notes that Dr. Bizzak ruled out a "slide-out" as the cause of the accident because it would have caused damaged to the house's gutter or shingles and no such evidence exists. (*Id*. ¶¶ 195-203.) According to Dr. Bizzak, he also concluded that the impact of the ladder with the ground did not cause the damage to the stand-off rung because the ladder could not have slipped out without the standoff snapping off first. (*Id.* ¶¶ 200, 203.)

Having reviewed the submissions by both parties, the Court concludes that while Defendant has identified bases on which to challenge Dr. Bizzak's methods, Dr. Bizzak has, in fact, used an identifiable scientific methodology. Contrary to Defendant's contention, he did not simply see cracks in the welds and "deem them defective." Clearly, Dr. Bizzak conducted an initial fact-finding through interviewing Mr. Kallok and visually examining the ladder and made certain conclusions. However, that was not "the beginning and end of the story" as Defendant suggests. He further evaluated his preliminary conclusions by continuing his investigation. He engaged a metallurgist to perform microscopic examination of the ladder's welds and certain destructive testing, examined these results, and reviewed a number of other materials, including Defendant's

quality control tests, photographs, a video of the accident scene, written discovery exchanged in the case and deposition transcripts. He then applied his findings, evaluation, and expertise to the issues here. Based on this methodology, he rendered certain opinions about adequacy of the welds on the ladder involved in this incident.

Defendant also argues that Dr. Bizzak's testimony is unreliable. "[T]he evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda,* 520 F.3d at 247 (quoting *Paoli II).* An expert's testimony need not have "the best foundation" or be "supported by the best methodology or unassailable research." *In re TMI Litig.*, 193 F.3d 613, 655 (3d Cir. 1999) *amended,* 199 F.3d 158 (3d Cir. 2000). Instead, admissibility of an expert's opinions turns on "whether the expert's testimony is supported by good grounds." *Id*; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 746 ("[T]he issue is whether the evidence should be excluded because the flaw is large enough that the expert lacks good grounds for his or her conclusions."). In undertaking this inquiry, "[e]ach aspect of the expert's opinion 'must be evaluated practically and flexibly without bright-line exclusionary (or inclusionary) rules.'" *Karlo*, 849 F.3d at 81 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012)). Expert opinions cannot be based on "subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742.

Defendant argues in part that Dr. Bizzak's testimony is unreliable because his analysis does not "reflect what occurred." (ECF No. 40 p. 2.) Defendant disputes certain facts on which Dr. Bizzak relies. That said, an expert may base his opinion on disputed facts, which then becomes an appropriate subject for cross-examination. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). "A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight

those weaknesses through effective cross-examination." *Id.* at 414-15 (citations omitted). Further, Defendant appears to suggest that because its own expert reaches a different conclusion, Dr. Bizzak's opinions must be wholly discounted. However, Dr. Bizzak's opinions are sufficiently based on "good grounds" to permit his testimony at trial.

The methodology and the bases for Dr. Bizzak's opinions are reliable enough to be admissible and are relevant to the issues in this case. Defendant may challenge any of his opinions or the grounds for such opinions through cross-examination at trial.

C.  Relevancy and "Fit"

Finally, Defendant argues that Dr. Bizzak's report and testimony are irrelevant and do not meet the "fit" requirement. The "fit" requirement "goes primarily to relevance." *In re TMI Litig.*, 193 F.3d at 663 (quoting *Daubert*, 509 U.S. at 591). Thus, the inquiry in assessing "fit" is "whether an expert's testimony . . . 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* (quoting Fed. R. Evid. 702(a)).

Plaintiffs argue that Dr. Bizzak's opinions "fit" because they directly address what caused the accident – purportedly failed welds. Among other things, Dr. Bizzak concluded that the rung separated from the ladder as a result of deficient welds, based in part on his engineering analysis that the failure of a product with adequate welds would lead to tearing or deformation of base material, and no such condition was observed. (Bizzak Report, pg. 5.) This is directly relevant to how Plaintiffs assert that the accident occurred. Simply put, Dr. Bizzak's opinions about these issues "fit" because they will help the fact finder to determine whether the ladder failed as Plaintiffs contend– a key fact in dispute in this case. *UGI Sunbury*, 949 F.3d at 835; Fed. R. Evid. 702(a).

Dr. Bizzak's proposed testimony is relevant and meets the "fit" test because his scientific, technical and specialized knowledge will help the trier of fact "to understand the evidence or determine a fact at issue." Fed. R. Evid. 702(a).

### IV.  Conclusion

For these reasons, Defendant's Motion to Exclude the Testimony of Dr. David J. Bizzak, Ph.D. is DENIED.

Dated:  September 19, 2023                    BY THE COURT:

                                              s/ Patricia L Dodge
                                              PATRICIA L. DODGE
                                              United States Magistrate Judge