IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL KALLOK, et al. | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Civil Action No. 2:21-805 |
| | ) |
| WING ENTERPRISES, INC.T/D/B/A | ) Magistrate Judge Patricia L. Dodge |
| LITTLE GIANT LADDER SYSTEMS, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiffs Paul and Shana Kallok commenced this action against Defendant Wing Enterprises, Inc., t/d/b/a Little Giant Ladder Systems asserting claims of (1) strict liability; (2) negligence; (3) breach of warranty; and (4) loss of consortium. (ECF No. 1.) Their claims arise out of an accident that occurred while Mr. Kallok was using what Plaintiffs assert was Defendant's defectively manufactured ladder.

Defendant has now moved for summary judgment in its favor regarding all of Plaintiffs' claims (ECF No. 37). For the reasons that follow, Defendant's motion will be denied.

**I.     Relevant Procedural Background**

This action was commenced in June 2021. After Defendant filed an Answer, the parties engaged in a lengthy period of discovery and participated in an early neutral evaluation.

After the issuance of the pretrial order that, among other things, set the trial date, Defendant was granted leave to file a dispositive motion. On June 27, 2023, Defendant filed a Motion for

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

Summary Judgment, Brief in Support of Motion for Summary Judgment and a Concise Statement of Material Facts Not in Dispute.  (ECF Nos. 37, 38 and 41.[2])  Plaintiffs filed a response in opposition to Defendant's motion and a response to Defendant's Concise Statement of Material Facts (ECF Nos. 49 and 51.)  Both parties also filed appendices of documents in support of their concise statements.  (ECF Nos. 48 and 53.)

Contemporaneous with the filing of its summary judgment motion, Defendant filed a Motion to Exclude the Testimony of David J. Bizzak, Ph.D. (ECF No. 39), who is Plaintiffs' liability expert witness. Plaintiffs filed a response in opposition to this motion.  (ECF No. 50.)  In briefing the Motion to Exclude, both parties relied upon facts, testimony, documents, and other materials contained in their respective concise statements and appendices.  Defendant's motion to exclude Dr. Bizzak as an expert witness has been denied.  (ECF No. 59.)

## II.     Relevant Factual Background[3]

This action arises out of an accident that occurred on December 30, 2019.  On that date, Mr. Kallok was working as a subcontractor for Leaf Filter and was in the process of installing gutter guards on the house of Dr. Jerry Martin using an M26 multi-use Type 1A Ladder marketed as the "Little Giant Ladder Systems 15426-001 Velocity" manufactured by Defendant (the "Ladder").  (ECF No. 41 ¶¶ 5, 13,14; ECF No. 51 ¶ 213.)  The Ladder was an extendable type and contained a wall standoff attachment.  (ECF No. 41 ¶¶ 6-7; ECF No. 51 ¶ 211.)

The Ladder was manufactured at a facility called Z-Cal in China. (ECF No. 41 ¶ 105.) Prior to shipping, visual tests and weld strength tests, called "Pry" tests, are conducted of

---

[2] The 850-page Appendix to Defendant's Concise Statement of Facts was removed from public view by the Court because it included multiple documents with personal identifiers. It was subsequently refiled by Defendant with the necessary redactions at ECF No. 48.

[3] The following facts, drawn from Defendant's Concise Statement of Material Facts, Plaintiffs' response thereto (ECF Nos. 41 and 51), and their appendices (ECF Nos. 48 and 53), are undisputed unless otherwise noted.

2

Defendant's Ladders at the Z-Cal facility. One visual test and one Pry test per day of one of Defendant's Ladders is conducted by representatives of Z-Cal. These visual and Pry test results are documented with photographs, along with inspection check sheets, and once a month, are sent to Scott Patton, Defendant's director of quality control. (*Id*. ¶¶ 107,108,112; ECF No. 48-1 p. 290; ECF 53 Exhibit D; ECF No. 51 ¶ 245.) Nine months before the manufacture of the Ladder, Defendant stopped basing an employee at the Z-Cal facility to oversee Z-Cal's Pry tests. (ECF No. 51 ¶ 245.) Since then, Defendant has relied on a representative of Z-Cal to oversee the daily visual and Pry tests and provide the monthly reports to Mr. Patton. (*Id.*)

Mr. Kallok purchased both the Ladder and the wall standoff online through Amazon on October 18, 2018. (ECF No. 41 ¶ 8; ECF 51 ¶212.) When he purchased the Ladder, the rung-to-side welds were covered by plastic caps. (ECF No. 51 ¶ 160.)

Mr. Kallok testified that on the day of the accident, he positioned the Ladder against the side of Dr. Martin's house at a 75-degree angle, placed both ends of the standoff attachment on top of the roof, utilized additional steps recommended by Defendant when setting up the Ladder to ensure it was on a safe angle and that both legs of the Ladder were on the pavement, and climbed it to the second floor. (ECF No. 41 ¶¶ 14-15, 28; ECF No. 51 ¶¶ 215-230.)[4] While on the Ladder, Mr. Kallok heard a pop or bang and the Ladder started to move. (ECF No. 41 ¶ 17; ECF No. 51 ¶ 231.) He then attempted to climb down the Ladder. (ECF 41 ¶ 17; ECF 51 ¶ 232.) At that point, the standoff attachment folded and broke off and the Ladder slid down the side of the house. Mr. Kallok held on to the Ladder, riding it down until he crashed onto Dr. Martin's driveway.[5] (ECF

---

[4] Defendant's experts contend that given the position of the Ladder at the time of the incident and the slope of the driveway, the Ladder could not have been placed so that both feet of the Ladder were on the ground if both standoff ends were on the roof. Instead they contend one of the two Ladder feet would have been two inches off the ground. (ECF No. 41 ¶¶ 35-36; 41.) Defendant's experts also claim the Ladder was placed not at a 75-degree angle but a 60-degree angle. (*Id.* ¶ 40.)

[5] The Complaint describes a different version of the accident, alleging that the movement of the Ladder caused Mr. Kallok to lose his balance and fall twenty feet to the ground. (ECF No. 1 ¶ 15.) *Footnote continued on next page…*

No. 41 ¶ 17; ECF No. 51 ¶¶ 233-234.)   The separated wall standoff dangled from the gutter, then fell and hit Mr. Kallok on the head.  (ECF No. 41 ¶ 25.)  Mr. Kallok sustained various injuries as a result of this accident.  (ECF No. 51 ¶¶ 235, 236.)

Plaintiffs claim that although used properly by Mr. Kallok, the Ladder was defectively manufactured and failed because of these defects. In support of their claims against Defendant, Plaintiffs rely in part upon an expert, David J. Bizzak, Ph.D., a mechanical engineer.  He opines, among other things, that the separation of one of Ladder rungs occurred because of deficient rung-to-side rail welds, and if not for these defective welds, the accident would not have occurred.  (ECF 41 ¶ 49; ECF 51 ¶185; ECF 53 Exhibit D.)

In turn, Defendant retained Erick H. Knox, Ph.D., a biomedical engineer, and Ellen Wright, Ph.D., a metallurgist, who have rendered opinions that the accident was caused by Mr. Kallok's misuse of the Ladder and that the Ladder's welds were not inadequate or faulty.  (ECF 41 ¶¶ 119, 124 and 125; ECF 48-6; ECF 53 Exhibit G.)  They opine that Mr. Kallok misused the Ladder by, among other things, setting it up at an angle of 60 degrees and not accounting for a significant slope on the driveway during the set up, and as a result, one leg of the Ladder was not on the ground when the accident occurred.  (ECF No. 41 ¶¶ 39-42.)

---

The parties' concise statements of material fact reference Mr. Kallok's deposition testimony on the issue.  Thus, the citations in this Memorandum Opinion about how the accident occurred are from the concise statements of material fact quoting from or summarizing Mr. Kallok's deposition testimony.

**III.     Legal Standard**

As the Federal Rules of Civil Procedure provide, summary judgment must be granted if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence which shows the lack of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Id.* (internal citation omitted). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In following this directive, a court must consider the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *Doe v. Cty. of Ctr., Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

**IV.     Discussion**

Defendant asserts that it is entitled to judgment in its favor with respect to all of Plaintiffs' claims because Dr. Bizzak's opinions must be excluded, and without expert testimony, Plaintiffs cannot prevail on any of their claims. Alternatively, Defendant argues that even if Dr. Bizzak's opinions are not excluded, it is entitled to judgment in its favor as a matter of law.

A. <u>Dr. Bizzak May Provide Expert Testimony at Trial</u>

Defendant correctly argues that "expert testimony is required in a products liability case where a defect is alleged unless the defect is obvious and within the comprehension of the average juror. *Oddi v. Ford Motor Company*, 234 F.3d. 136, 159 (3rd Cir. 2000)." (ECF No. 38 p. 8.) Here, the defect is not obvious. As a result, Plaintiffs offer the expert opinions of Dr. Bizzak as to alleged manufacturing defects of the Ladder, and Defendant has moved to exclude his testimony in its entirety. However, as explained in the Court's Memorandum Opinion regarding this issue, Dr. Bizzak will be permitted to testify at trial as a liability expert.

As discussed in more detail in the opinion, the issues raised by Defendant regarding Dr. Bizzak's qualifications go to the weight that a trier of fact may give to his opinions, not whether he is qualified to offer them. Moreover, while Defendant clearly has identified bases upon which to challenge Dr. Bizzak's methods, Dr. Bizzak has, in fact, used an identifiable scientific methodology and the bases for his opinions are sufficiently reliable to be admissible. Further, his opinions "fit" because they are relevant to the issues in this case.

Thus, to the extent that Defendant's summary judgment motion is based on the suggested exclusion of Dr. Bizzak's expert opinions, it will be denied.

B. <u>Defendant's Alternative Arguments</u>

Defendant makes several alternative arguments in support of its motion. It first argues that it is entitled to summary judgment on Plaintiffs' strict liability and breach of warranty claims because the record evidence is insufficient to allow a jury to conclude that the Ladder was defective at the time of sale.

Defendant also contends that no jury could reasonably conclude that the accident was caused by defective welds that existed at the time of sale because Dr. Bizzak failed to rule out

alternative causes of the accident. Defendant also reiterates some of the arguments that it raised in the motion to exclude Dr. Bizzak's testimony.

In addition, Defendant asserts that a jury could not reasonably determine that negligence purportedly arising from its quality assurance program caused the accident. (*see generally* ECF No. 38.)[6]

Each of those arguments will be addressed below.

1. Evidence of Defect at the Time of Sale

Defendant has moved for summary judgment with respect to Plaintiffs' strict liability and breach of warranty claims.[7] To prevail on these claims, Plaintiffs must show that: (1) the Ladder was defective; (2) the defect was the proximate cause of Mr. Kallok's injuries; and (3) the defect causing the injuries existed at the time the Ladder left Defendant's hands. *Pavlik v. Lane Ltd./Tobacco Exporters Int'l.*, 135 F.3d 876, 881 (3d Cir. 1998) citing *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (Pa. 1966).

Defendant asserts that Plaintiffs cannot prevail on their strict liability and breach of warranty claims because neither the opinions offered by Dr. Bizzak nor any other evidence of record establishes that the Ladder was defective at the time of sale. Therefore, any such conclusion would be improperly speculative. Defendant notes that the Ladder was used by Plaintiff for 90 percent of his work over a 14-month period without incident. (ECF No. 41 ¶ 45; ECF No. 51 ¶ 45.) Moreover, based upon photographs and the opinions offered by Dr. Wright, Defendant asserts

---

[6] Defendant has not addressed Plaintiffs' loss of consortium claim other than to correctly note that it cannot be maintained if judgment is entered in Defendant's favor with respect to Mr. Kallok's claims.

[7] The Third Circuit has held that strict liability claims and breach of warranty claims are "essentially the same." *Grubbs v. International Harvester, Inc.* 718 F.2d 88, 94-95 (3d Cir. 1983). They will therefore be addressed together in this and other sections of this opinion.

that the Ladder was physically abused and damaged, including evidence that it withstood high loads, resulting in stresses beyond its intended design. (ECF No. 41 ¶¶ 127, 128.)

Defendant also asserts that Dr. Bizzak did not evaluate whether the allegedly deficient welds existed when the Ladder was sold, nor did he consider the damaged condition of the Ladder or explain why the Ladder functioned for 14 months of use without failing.

Plaintiffs deny that the Ladder was misused; regardless, however, they assert that there are material issues of fact regarding whether the Ladder was defective when sold, and that there is sufficient evidence that the defects in the Ladder existed when it left the manufacturer. They note that there is no evidence that any damage to the Ladder through its use by Mr. Kallok has been connected by Defendant to the weld failure at issue. According to Plaintiffs, the only specific misuse relates to the standoff, an issue that Dr. Bizzak opined was not related to the weld failure. (ECF No. 51 ¶¶ 195-203.) Moreover, while Defendant's expert opines that the Ladder withstood high loads beyond its intended design, exemplar tests revealed that a Ladder with proper weld penetration could withstand up to 1,200 pounds, which capacity is well beyond any force applied by Mr. Kallok at the time of the accident "regardless of the angle of set up or standoff positioning." (*Id.* ¶¶ 174.) Plaintiffs also argue that Defendant's suggestion that the fact that many of the rungs are deformed without "rung departure" actually supports Dr. Bizzak's theory that the rung that failed would not have separated from the side rails if the weld had been properly applied. In fact, they argue, this is the purpose of the Pry test used at Defendant's manufacturing facility. Dr. Bizzak also concluded that there was no evidence of improper use by overloading. (*Id.* ¶¶ 178, 179.)

There is no evidence that Plaintiffs' Ladder was tested after it was manufactured. Dr. Bizzak concluded that many of the welds on the Ladder were "inartfully executed fillet welds that

8

should have been identified as deficient by proper quality control assurance inspections of the Ladder prior to shipment from the factory." (ECF No. 48-1 pp. 251-252; ECF No.51 ¶ 165; ECF 53 Exhibit D pp. 5-6.) Z-Cal's visual inspection and testing of ladder welds before delivery consisted of conducting one visual and one Pry test of one ladder per day, taking photographs of such Pry tests and sending the photographs once a month to Defendant's quality control team. (*Id.*) Plaintiffs note that the plastic caps that were installed at the time of manufacture covered the welds, rendering it impossible thereafter to personally inspect the welds to determine whether they were defective. Moreover, these is no evidence that anyone removed the caps before the accident, that the Ladder was substantially altered after its sale, or that the welds were repaired, replaced or tampered with after the Ladder's purchase.[8]

Viewing all of the evidence in the light most favorable to the non-moving party, there is sufficient evidence to support Plaintiffs' position that the Ladder was defective at the time of manufacture. Dr. Bizzak opines that some of the Ladder welds, including the welds on the rung at issue, were deficient. Among other things, he found that the welds on the Ladder were poorly executed and the welds that failed in the accident exhibited evidence of improper heat penetration. (ECF No. 53 Exhibit D.) He found that there was insufficient weld penetration to melt the parent material of the components to be joined. (*Id.*)

Because the welds are covered with plastic caps upon manufacture, any defects would not have been visible to the user, or to Defendant. There is no evidence that either Defendant or Mr.

---

[8] Under Pennsylvania law, "if a substantive alteration, not foreseeable to the manufacturer, occurs and that alteration amounts to a supervening or intervening cause of the plaintiff's injuries, the manufacturer or seller is not liable for the injuries caused by its defective product." *Fisher v. Walsh Parts & Service Co., Inc.,* 296 F. Supp. 2d 551, 564 (E.D. Pa. 2003) citing *Davis v. Berwind Corp.*, 433 Pa. Super. 342, 350, 640 A.2d 1289, 1297 (Pa. Super. 1994), *aff'd*, 547 Pa. 260, 690 A.2d 186 (1997); *see also* Restatement of Torts (Second) §402A, which imposes strict liability for defective products, and which has been adopted by the Pennsylvania Supreme Court. *See Webb, supra.*, 220 A.2d at 854. As mentioned previously, in this case, there is no evidence that the Ladder or its welds were substantially altered after its sale to Plaintiffs.

Kallok removed the caps or otherwise inspected the welds. Further, there is no record evidence that at any time after the Ladder was purchased, the welds were substantially altered, subject to abuse, or replaced. Moreover, while it remains an explorable issue at trial, the alleged abuse or misuse of the Ladder has not been conclusively linked to the failure of the Ladder when Mr. Kallok was using it on December 30, 2019.

Clearly, Defendant has offered conflicting evidence. Among other matters, its experts opine that the welds were not defective when they left the manufacturer or, indeed, at any time thereafter. It notes that Mr. Kallok used the Ladder extensively over a 14-month period without incident, undermining Plaintiffs' theory that many of the welds were inadequate when the Ladder was manufactured. Further, it cites to evidence that the Ladder was damaged and subjected to overloading. While these and many other issues can and presumably will be examined at trial, there are genuine issues of material fact about whether the welds of the Ladder were defective at the time of sale, a key element of Plaintiffs' strict liability and breach of warranty claims. Thus, to the extent that Defendant's motion is premised upon the lack of any evidence that that Ladder was defective when manufactured, it will be denied.

2. Dr. Bizzak's Purported Failure to Consider the Set Up of the Ladder

Defendant also contends that because Dr. Bizzak failed to consider how the Ladder was set up at the time of the incident, a jury could not reasonably conclude that the accident happened because of a defect in the Ladder.[9] It notes that Dr. Bizzak never visited the accident scene and did not consider the slope of the driveway or the inclination of the Ladder just before the accident.

A review of the record evidence shows that there is a factual dispute about how the Ladder was set up at the time of the incident. Defendant's experts opine that the Ladder was set up at an

---

[9] Defendant made a similar argument in its Motion to Exclude. (*See* ECF No. 39 pp. 2-3; and 8.)

improper angle of 60 degrees, a significant slope existed on the driveway and one leg of the Ladder was not on the ground when the accident occurred. Thus, they conclude, an improper Ladder set-up, not failed welds, caused the accident. (ECF No. 41 ¶¶ 39-42.)

By contrast, Mr. Kallok testified at his deposition that the Ladder was set up at close to the recommended 75-degree angle, that he utilized additional steps recommended by Defendant when setting up the Ladder to ensure it was on a safe angle and that both legs of the Ladder were on the pavement before he ascended. (ECF No. 51 ¶¶ 220-222, 226-227; 229.)

In addition to the existence of these disputed facts, Plaintiffs argue that Dr. Bizzak has rendered an opinion that no matter how the Ladder was set up, the accident could not have happened but for the failed welds. (ECF No. 49 p. 18; see also ECF No. 51 ¶¶ 165, 171-173, 196, 203-205.) Specifically, he opines that the Ladder could not have moved in the manner it did unless the weld on the rung to which the standoff was attached failed. (*Id.*)

Defendant correctly notes that when he wrote his report, Dr. Bizzak relied on inaccurate facts about the sequence of events as to how the accident happened. Plaintiffs respond that these discrepancies are inconsequential to his conclusion that defective welds caused the accident. In other words, regardless of the manner in which the Ladder moved and caused Mr. Kallok to fall, Dr. Bizzak concludes that the standoff broke before the Ladder slipped.[10]

Thus, genuine issues of material fact regarding how the Ladder was set up on the date of the accident and whether an incorrect set up caused the accident preclude judgment in Defendant's favor. At the same time, Dr. Bizzak's conclusions about the cause of the accident, the potential

---

[10] In addition to ruling out the positioning of the Ladder as a cause of the accident, Dr. Bizzak has also ruled out stress, overloading or a slide out as a cause, and concludes that the impact of the ground did not cause a weld break. (ECF No. 51 ¶¶ 176, 179, 195-205.)

placement of the Ladder on the date of the accident, and the impact, if any, of factual discrepancies remain matters that can be challenged at trial.

### 3. Dr. Bizzak's Purported Primary Use of Visualization of the Welds in Rendering His Opinions

Defendant also contends that because Dr. Bizzak's opinion was based "solely" on visualization of the welds, it was not the product of scientific methodology and is thus insufficient to prove a manufacturing defect as a matter of law. (ECF No. 38 pp. 15-16.) This is essentially a restatement of the argument Defendant made in its Motion to Exclude. As stated in its Memorandum Opinion denying the Motion to Exclude, while Defendant has identified bases upon which to challenge Dr. Bizzak's methods, Dr. Bizzak has, in fact, used an identifiable scientific methodology. Contrary to Defendant's contention, he did not "solely" conduct a visualization of the welds to find them defective. Dr. Bizzak conducted an initial fact-finding through interviewing Mr. Kallok and visually examining the Ladder and rendered certain preliminary conclusions. He further evaluated his preliminary conclusions by continuing his investigation. He engaged a metallurgist to perform a microscopic examination of the Ladder's welds, who conducted non-destructive and destructive testing. He examined those results, and reviewed a number of other materials, including Defendant's quality control tests, photographs, a video of the accident scene, written discovery exchanged in the case and deposition transcripts. He then applied his findings, evaluation and expertise to the issues in this case. Based on this methodology, he rendered certain opinions about adequacy of the welds on the Ladder that was involved in this incident.

Viewing these facts in the light most favorable to the Plaintiffs, drawing all inferences and resolving all doubts in their favor, the court finds that a reasonable jury could find Dr. Bizzak's methodology and the bases for opining that the Ladder's welds contained manufacturing defects to be credible. Defendant may challenge his opinions and the grounds for such opinions at trial.

4. Plaintiffs' Negligence Claim

Defendant's final argument is that it is entitled summary judgment on Plaintiffs' negligence claim.

To prove a negligent manufacturing claim, a plaintiff must show that "(1) the manufacturer owed a duty to the plaintiff, (2) the duty was breached, and (3) such a breach was the proximate cause of plaintiff's injuries." *Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 749 (W.D. Pa.2004) (citing *Dauphin Deposit Bank & Trust v. Toyota*, 408 Pa. Super. 256, 596 A.2d 845, 849–50 (1991)). Furthermore, in a negligence claim, Plaintiff must prove that the manufacturer was at fault. *See Parkinson*, 315 F.Supp.2d at 749. To demonstrate a breach of duty, a plaintiff must show that a defendant "failed to exercise due care in manufacturing or supplying the product. Put another way, [a p]laintiff must come forward with evidence that [a defendant] ... deviated from the general standard of care expected under the circumstances." *Id*. at 754 (citing *Taylor v. Danek Med., Inc.*, No. 95-7232, 1998 WL 962062, *11 (E.D. Pa. Dec. 29, 1998)).

In support of its argument on this claim, Defendant argues that the only allegations that distinguish the negligence claim from the strict liability claim are those that allege that Defendant's quality assurance practices are insufficient and there is no evidence to support a claim of negligence from allegedly inadequate quality control. (ECF No. 38 p. 17.) In response, Plaintiffs argue there are material issues of fact surrounding Defendant's quality assurance protocols and that a reasonable jury could conclude that such procedures were insufficient and led to the failure to discover and correct the faulty welding on the Ladder. (ECF No. 49 p. 24.) Specifically, they argue a reasonable jury could find that Defendant's quality assurance protocols and lack of oversight of the Pry tests while the Ladders were still at Z-Cal deviated from the general standard of care expected under the circumstances based on Dr. Bizzak's opinions and anticipated

13

testimony. (*Id.*)  Dr. Bizzak takes issue with the small sample size of tests performed on the Ladders by Z-Cal; the lack of formal procedures by Z-Cal for conducting Pry tests; the fact that because the welds were covered with plastic caps before shipment to the Defendant, there was no visual quality assurance inspection of the welds performed by Defendant; that Z-Cal, not Defendant, chose the specimens for testing; and that on the date the Ladder was manufactured, no company representative of the Defendant was on site to oversee Z-Cal's quality assurance procedures.  (ECF No. 51 ¶¶ 210, 245, 147.)

Having construed such facts in the light most favorable to the Plaintiffs and drawing all inferences and resolving all doubts in their favor, there are genuine issues of material fact, including the conflicting expert opinions, about whether Defendant's quality control procedures, which were delegated to Z-Cal, deviated from the general standard of care expected of a manufacturer and if so, whether a reasonable jury could conclude that any deficiencies caused or contributed to the accident. *See Anderson*, 477 U.S. at 248 (1986).  Consequently, Defendant's motion as it relates to Plaintiffs' negligence claim is denied.

**V.  Conclusion**

For these reasons, the Court will deny Defendant's Motion for Summary Judgment. An appropriate Order follows.

Dated: September 19, 2023                              BY THE COURT:


                                                                               /s/ Patricia L. Dodge
                                                                               PATRICIA L. DODGE
                                                                               UNITED STATES MAGISTRATE JUDGE